IRENE HART, Appellant, v. BYRON L. HART, Appellee.

No. 47184.

(Reported in 30 N. W. 2d 748)

February 10, 1948.

Bannister, Carpentier & Ahlers, of Des Moines, for appellant.

Whitfield, Musgrave, Selvy & Fillmore, of Des Moines, for appellee.

GARFIELD, J.—Plaintiff, Irene Hart, and defendant, Byron Hart, were married May 7, 1928. They have two sons, Dick, born in October 1930, and Jim, two years younger. In December 1936, plaintiff was granted a divorce from defendant and awarded the custody of the boys together with alimony and child support of $150 per month until the children become self-supporting or of legal age. The decree provided that at such time "this court shall then determine what sums should thereafter be paid by defendant for alimony to plaintiff exclusive of support money for said children."

The decree further provided defendant shall continue to pay all premiums on $10,000 of life insurance held by him, payable to the children; and deliver the policy to plaintiff together with receipts for premiums as they are paid. Also that defend-

ant shall procure and maintain additional life insurance of $10,000, payable to plaintiff, and deliver to her the policy and receipts for premiums as they are paid. That the beneficiaries named in the policies shall not be changed except that plaintiff consents to a change of beneficiary as to her if she should remarry. Apparently the above provisions of the decree were pursuant to the parties' stipulation.

On March 4, 1939, defendant filed application for modification of the decree, especially for decrease of the monthly payments, on the ground that since the divorce conditions have materially changed, his income has been reduced and he is unable to comply with the decree. On May 3, 1939, this application was in the main denied. However, some changes, not now important, were made in defendant's right to visit and have temporary custody of the children. The monthly payments of $150 were continued but defendant was permitted to pay a delinquency therein of $175 in equal quarterly payments beginning August 1, 1939.

On April 16, 1943, it was ordered, apparently without the filing of any other application therefor, that the decree be modified by reducing the monthly payments from $150 to $40 until each of the children is 21, and that defendant shall retire at the rate of $10 per month delinquent payments of support money in the agreed amount of $1,500.

On August 5, 1947, plaintiff made application for increase in the monthly payments provided by the order of April 16, 1943, for the restoration of the terms of the original decree and such other relief as may be equitable. She alleged defendant, in violation of the terms of such decree and without her knowledge, had borrowed $3,385 from the life insurance company upon the policies totaling $20,000 referred to in the decree; defendant is state agent for a large life insurance company; his earnings have substantially increased; the cost of the care and education of the boys has also increased; the older son is about to enter college; the allowances for plaintiff and the boys are inadequate, and the conditions under which defendant procured the order of April 16, 1943, have ceased to exist.

Defendant's answer to the application denies much thereof

and alleges defendant is remarried and supports his present home; taxes and other obligations of defendant have increased; plaintiff is profitably employed and the boys are at least partly self-supporting.

After a hearing on plaintiff's application it was ordered on August 15, 1947, that monthly payments on the delinquent alimony and support money (which amounted to $1,500 on April 16, 1943) be increased from $10 to $50 and current monthly payments increased from $40 to $50 until the children become self-supporting or of legal age or unless plaintiff should remarry. From this order plaintiff has appealed to us.

As we have frequently pointed out, our statute, section 598.14, Code, 1946 (10481, Code, 1939), authorizes the court in which a divorce has been granted to make subsequent changes, "when circumstances render them expedient," in the terms of the decree in relation to the children, property, parties and maintenance of the parties.

We have held many times a divorce decree is conclusive as to the circumstances then existing and a later modification will be made only where there is some subsequent material change of conditions. Newburn v. Newburn, 210 Iowa 639, 641, 231 N. W. 389, 390, and citations; Goldsberry v. Goldsberry, 217 Iowa 750, 755, 252 N. W. 531, 533, and citations.

Likewise, the order of April 16, 1943, is conclusive under the conditions then existing (Maron v. Maron, 238 Iowa 587, 592, 28 N. W. 2d 17, 19, in effect so holds) if we are to assume, without deciding (as we apparently did assume in Toney v. Toney, 213 Iowa 398, 239 N. W. 21), the court had the power to change the manner of paying the instalments which had then accrued.

A substantial change in the former husband's ability to pay alimony or child support may be sufficient basis for modification of such provisions of the decree. Paul v. Paul, 217 Iowa 977, 981, 252 N. W. 114, and citations.

Further, the decree here provided, in accord with the stipulation of the parties, the monthly payments "may be increased should it later appear that defendant's earning capacity or financial resources subsequently increase so as to warrant monthly payments in a larger amount."

Courts are somewhat reluctant to .change provisions relating to alimony for the wife but will not hesitate upon proper showing to modify provisions for the care, maintenance and education of children. Paul v. Paul, supra, 217 Iowa 977, 980, ·252 N. W. 114, and citations. Here, the monthly payments include both alimony and support money for the children.

The trial court apparently found circumstances had materially changed since the order of April 16, 1943. We agree with this finding but think the relief granted plaintiff is inadequate.

For the last eight years plaintiff and the two boys have lived in Little Rock, Arkansas, where plaintiff has had full-time employment in a junior high school for the past six years. Her salary is $150 a month but her "take-home pay" is only $137.50. In 1943 she was earning $125 a month and the deductions were $8. When plaintiff moved to Little Rock she bought a home on contract for $6,200, on which she has paid about $3,000. (Eight hundred dollars of this was given plaintiff by a relative.) Monthly payments on the home are $37. Plaintiff does her own housework with some help from the boys.

Plaintiff insists she has been unable to maintain herself and sons upon her income, including defendant's payments under the 1943 order. She supports her claim with figures that are quite convincing. Apparently plaintiff is economical, capable and industrious.

The older boy graduated from high school in 1947 and was ready to enter the state university in the fall. He won a scholarship under which he is to receive $500 annually if he maintains a sufficient grade in his studies and conducts himself properly. However, the scholarship will defray only about half his college expenses, with board and room of $65 to $70 a month and fees to the university of $180 a year.

The younger boy is in the tenth grade in school. Both boys need clothes. The boys earn their spending money and buy part of their clothes. Plaintiff testified her living expenses have almost doubled since the modification of 1943.

Defendant is a general agent (plaintiff refers to him as state agent) for a large life insurance company with his head-

quarters in Des Moines. He has had five years of college education and is admitted to the bar. (Plaintiff has had almost three years of college education.) Defendant has married twice since plaintiff's divorce from him. His second wife died in October 1943. The following March he married his present wife. The two boys are defendant's only children.

When the decree was modified in 1943 defendant's second wife was ill. This illness was somewhat of a drain on his finances and it was a hardship on him to continue the monthly payments provided by the decree. Defendant testified it was because of this circumstance he procured the 1943 order.

Defendant's earnings without taxes (presumably income taxes) were $7,010 in 1943, $6,389 in 1944, $6,746 in 1945 and $11,762 in 1946. While defendant says his 1946 income was unusually high, he did not show his earnings for the seven months of 1947 prior to the hearing. The value of "renewals" to defendant from his life insurance company (i. e., his commission on subsequent premiums) was about $10,000 in 1940. This value has subsequently increased. Defendant purchased a home on contract in March 1940 for $7,500 on which about $4,500 is now owing. He has $10,000 of life insurance payable to his present wife in addition to the $20,000 held by plaintiff.

Defendant has borrowed from the life insurance company $3,385 on the policies held by plaintiff. There is a lien against them for this amount which would be deducted from the proceeds thereof. At the time of the divorce defendant had borrowed $1,456 on the policies, with plaintiff's knowledge. Defendant's additional borrowings on the policies since the divorce amount to about $1,929. Plaintiff had no knowledge of these added borrowings. According to defendant they were made in order to pay his insurance premiums.

Without further summarizing the testimony, we think it appears quite clearly defendant is much better able than he was in April 1943 to contribute to the support of his wife and especially the two boys. The circumstance defendant says moved him to procure the 1943 modification has ceased to exist. Defendant's 1946 earnings show a large increase. The

equity in his home and his insurance "renewals" are of greater value.

The needs of plaintiff and at least the older son have materially increased. Aside from the increased cost of living, which of course affects defendant as well as plaintiff, Dick's college education will add about $500 annually to the living expenses of plaintiff and the two boys, in addition to the scholarship. It is proper that these boys have a college education. If they are to get one defendant should be called upon to comply substantially with the terms of the original decree until the boys are educated.

The trial court's increase of the current monthly payments from $40 to $50 and the payments on the delinquent alimony and support money (which have at all times belonged to plaintiff) from $10 to $50 is in our opinion inadequate and insufficient to permit plaintiff to maintain herself and sons and educate the sons.

We think defendant should make current monthly payments of $100 until each son has attended college four years, unless they both sooner discontinue school or college, until the payments now delinquent are fully made at the rate of $50 per month. Said $100 payments to be in addition to the $50 payments on delinquencies. When such delinquent payments are fully made defendant shall then make current monthly payments of $150 until the boys are educated, as above stated, or discontinue their education.

Plaintiff also contends, we think properly, that defendant's borrowing subsequent to the divorce, without her knowledge, of about $1,929 on the life insurance held by her under the terms of the decree is a violation thereof. The decree is clear that defendant shall pay all premiums on this insurance and maintain it in full force and effect. It is a plain violation of the spirit if not the letter of the decree for defendant to have paid some of these premiums merely by borrowing from the insurer and thereby reducing the value of the insurance. Plaintiff's application complains of this.

The terms of the decree regarding the insurance have never been changed. So far as shown no request therefor has

ever been made. The order of August 15, 1947, from which defendant has not appealed, recites "the remaining provisions of said decree in its original form and as modified, shall remain in full force and effect * * *." At least until modified, the provisions regarding insurance constitute a final adjudication. See Walters v. Walters, 231 Iowa 1267, 1270, 3 N. W. 2d 595, 596, and citations; Roach v. Oliver, 215 Iowa 800, 804, 244 N. W. 899, and citations. Plaintiff is entitled to the enforcement of these provisions. Defendant must therefore reduce to $1,456 (the amount borrowed against them at the time of the divorce) the loans on the policies held by plaintiff under the decree.

Nothing herein is to be taken as an approval of the reduction retroactively on April 16, 1943, of the monthly payments then accrued under the decree or as a holding the court had power to grant such relief. On this question see the authorities cited last above. We have assumed, without deciding, such reduction is valid because apparently no appeal was taken therefrom and plaintiff accepted such reduced payments for more than four years.

For the entry of decree in accordance with this opinion this cause is—Reversed and remanded.

MULRONEY, C. J., and OLIVER, BLISS, HALE, MANTZ, SMITH, and HAYS, JJ., concur.