Walter H. Strom, Appellant, v. Mary Elizabeth (Billy) Strom, Appellee.

Gen. No. 46,880.

First District, Second Division.

April 9, 1957.

Released for publication May 21, 1957.

Crowe, Yates, Abrahamson & Fisk, of Chicago, for appellant; Tom L. Yates, and Daniel W. Pecyna, of Chicago, of counsel.

Cantwell & Cantwell, of Chicago, for appellee and cross-appellant; Robert E. Cantwell, Jr., Yager Cantwell, and Robert E. Cantwell, III, all of Chicago, of counsel.

JUDGE SCHWARTZ delivered the opinion of the court.

██ Plaintiff husband appeals from an order allowing attorneys' fees, master's fees and costs in the prosecution of a petition filed by defendant wife which resulted in an increase in child support and reimbursement to the wife for certain unusual expenses occurring after the entry of a divorce decree. A cross-appeal was filed by defendant from that portion of the chancellor's order which, while allowing additional support, denied defendant's petition for the creation of a fund for the benefit of a minor child who had been stricken with poliomyelitis, from which fund the child could be provided with care and a college education even after attaining her majority. A motion was made by plaintiff to dismiss the cross-appeal on the ground that the order in question was entered by the court December 15, 1953, that it was a final order, and that an appeal should have been taken at that time. The order reserved for hearing the matter of attorneys' fees prayed for by defendant, which was referred to a master. There was thus left unsettled a substantial part of the case. When this was finally disposed of, plaintiff appealed and brought the entire record before the court, including a transcript of the proceedings with respect to the increase in child support. Piecemeal reviews are not encouraged by the court, and where substantial matters remain to be decided, the order is not final. Simpson v. Simpson, 4 Ill.App.2d

526 (1955); People v. Stony Island Savings Bank, 355 Ill. 401 (1934); Hunter v. Hunter, 100 Ill. 519 (1881). The motion to dismiss the cross-appeal is denied.

The parties to this action were divorced in 1941. At that time custody of the child Barbara, then three years old, was awarded to the defendant wife together with a lump sum property settlement of $135,000 and an award of $80 per month for support and maintenance of the child. In 1953 the defendant wife petitioned the court for an increase in the allowance for the child's support. This petition also sought reimbursement for moneys borrowed for the benefit of the child and for $5,000 derived from an insurance policy taken out by a third person (the then husband of the defendant wife) insuring the child against polio, and further asked that plaintiff be ordered to pay reasonable amounts to provide the daughter with a four year college education or, in the alternative, to establish a trust fund to safeguard and insure her education in the future. As before stated, the petition also sought attorneys' fees, expenses and costs. Both in his answer and in subsequent proceedings plaintiff resisted any increase whatsoever in the allowance to his child. There were numerous continuances, over the objections of defendant's attorneys. There was controversy over the actual net worth of plaintiff, although his attorney ultimately stipulated for the record that he was worth $950,000.

On December 15, 1953, the chancellor entered an order increasing the child's support from $80 to $250 per month and reimbursing the defendant wife for some of the extraordinary expenses requested. He denied reimbursement for moneys derived from the insurance policy and denied the prayer of the petition that provision be made for the child's education beyond the period of her minority on the ground that he had

no jurisdiction. The court allowed fees of $5,520 for the attorneys and $1,750 for the master.

The plaintiff husband contends that the court improperly referred the matter of attorneys' fees to a master and that the fees allowed the attorneys were unreasonable. The record shows no objection made to the court's reference of the cause to a master at the time such reference was made. As a matter of fact, counsel for defendant wife say they objected to this reference and that the court ignored their objection. In support of this the record shows that at the first hearing before the master, one of the attorneys for the wife said that the matter had been referred to the master over their objection, saying: "We thought he [the court] should be the one to decide and he said no, he didn't have time, and referred it to the master." To this statement counsel for the husband did not reply nor did he press his objection to the master's hearing of the case but proceeded to adduce evidence therein.

██ It is true, as urged by counsel for plaintiff, that the Divorce Act does not specifically provide for the reference of an issue on attorneys' fees to a master and that the Supreme Court rules provide that reference to a master shall be the exception, not the rule. It appears to us that where the court, as in the instant case, heard all the evidence on the main issues, a relatively brief hearing on attorneys' fees lasting but a few hours should have been sufficient to enable the court to decide the appropriate fees to be allowed. However, plaintiff's failure to object and his proceeding with the case would make it highly inequitable to hold that he can now urge this point. The cases support this conclusion. Freese v. Glos, 248 Ill. 280 (1911); Phillips v. O'Connell, 331 Ill. App. 511 (1947). Bushnell v. Cooper, 289 Ill. 260 (1919), cited by plaintiff, appears to us to support the principle that a party

359

who participates without objection in a hearing before a master may not, after the master's findings are made, argue for his benefit that the reference was improper.

■ Plaintiff husband argues that the award of $5,520 to the wife's attorneys was excessive. The master found that they had spent a total of 184 hours on the petition, so that the fee would represent an allowance of about $30 an hour. The wife's attorneys think this is inadequate and argue that they should be allowed $7,500. Certainly, for a matter of this sort the time spent seems excessive, yet an examination of the record reveals that plaintiff deliberately undertook to impose every impediment he could, technical and otherwise, in opposition to the petition on behalf of the child. One of the attorneys for the wife testified that he was informed by plaintiff's lawyer that this was plaintiff's policy, and the record amply supports this observation. Under such circumstances we can well understand how lawyers could expend a great amount of time in the prosecution of a suit so bitterly defended. However, the figure referred to includes not only the time spent by the senior counsel but by his two sons, one in practice but a short time, and is larger than we believe reasonable. The fee allowed to the wife's attorneys should be reduced 20 per cent. This does not include any allowance for the time spent on the question of providing for the child beyond her minority. When upon remandment pursuant to this decision the court hears the matter further, it should make an additional allowance to the wife's attorneys for the time spent on this phase of the case. We find no basis for the allowance of any fees for the time spent on the petition for fees.

■ The master's charge of $1,750 is based on a total time of 102 hours, or $87.50 a day. The Supreme and Appellate Courts of this state frequently have

been critical of fees charged by masters and have compared them with the earnings of judges, to whom they are in a sense assistants. Perhaps in this respect courts have overlooked the fact that a master has many expenses a judge does not have, such as office rent, stenographic services, and other charges. Nevertheless, the master's fee in the instant case is considerably larger than that warranted under the decisions of our courts, and a reduction of 20 per cent is likewise ordered with respect to the master's fee.

■ There is further controversy with respect to the chancellor's denial of costs incurred by defendant in the service of a subpoena duces tecum on the father in order that his true worth might be determined. The court felt that the husband's admission that he was worth $950,000 was all that was required and that the production of books and records was unnecessary. Under the circumstances we think the trial court ruled correctly. The wealth and substantial ability of the father to provide for his daughter in any manner the court should ultimately find reasonable was adequately established and it would only have been time-consuming to press that phase of the matter further.

We come now to the important question in this case which arises on the cross-appeal of the wife. Is the father of a child stricken with a serious disease during minority completely relieved of obligation for the child's care and education upon her reaching majority (save such as may be provided by a pauper's suit in County Court) or may a court of chancery, having taken jurisdiction in a divorce proceeding, proceed to provide for such child's care and education beyond the period of her minority? Defendant urges that the chancery court has such power and that it should be exercised in a provision for the depositing of funds with the court or other suitable depositary.

361

The Divorce Act (Ch. 40, Par. 14, Sec. 13, Ill. Rev. Stat. 1955) provides that the court may make an order concerning custody and care of minor children during the pendency of a suit and may award the custody of a minor child to either party, as the child's interest may require, and then this provision follows:

". . . and may make such provision for the education and maintenance of the child or children out of the property of either or both of its parents. . . ."

It is to be noted that the word "minor" is not used in qualification of the phrase "child or children" in this last provision. Moreover, in the section relating to *permanent alimony* and custody and support of children (Ch. 40, Par. 19, Sec. 18, Ill. Rev. Stat. 1955) which is the section applicable to this proceeding, it is provided that the court upon the granting of a divorce

". . . may make such order touching . . . the care, custody and support of the children . . . as shall be fit, reasonable and just."

The word "minor" nowhere appears.

This provision was first construed in Freestate v. Freestate, 244 Ill. App. 166. There, the Third Division of the Appellate Court, First District, had before it the petition of a mother for sufficient funds to provide for medical aid and support of a child. The child had been an invalid and at the time of the hearing was 23 years old. The court noted, as we have before, that the statute does not specifically refer to children who are minors and also noted that the question of whether such support can be obtained where the children are adults but are invalids and incapable of taking care of themselves had never been passed upon by that court or by the Supreme Court of this state. The court held that if a proper showing were made, the chancellor had authority to require the father to contribute to the

support of his invalid daughter. The court referred to two cases, Crain v. Mallone, 22 L.R.A. (N.S.) 1165 (Ky.) and Rowell v. Town of Vershire, 62 Vt. 405. The circumstances in both of those cases were quite different from those in Freestate v. Freestate, supra, and in the instant case, but they state the general principle that a parent is obligated to support an adult child incapable of self-support.

In Rife v. Rife, 272 Ill. App. 404 (1933) this division of the Appellate Court refused to follow the decision in the Freestate case and held that the chancellor was without jurisdiction to enter a post-decretal order providing for the support and education of a child beyond the attainment of her majority. In the Rife case the child was 20 years old, had been graduated from high school, had attended business school, and was a stenographer, but was frail and unable to secure employment. The defendant was 65 years old, appears to have been in ill health, and had no income except that which he received from his own labor. The court followed Boehler v. Boehler, 125 Wis. 625, holding that the statute "by necessary implication" did not permit provision to be made for a child beyond the period of its minority and that the only remedy for an impoverished child was a proceeding in the county court under the pauper statute.

The only Illinois case upon which the court relies in Rife v. Rife, supra, is Kelley v. Kelley, 317 Ill. 104. In the Kelley case the child was not yet one year old at the time the decree was entered and there was no question involved with respect to care and education beyond minority. The court held that the obligation of a father to support his minor child is not affected by a decree granting a divorce or by a decree awarding care and custody of the child to the wife or some other suitable person. The court said, p. 110:

"His children are of his blood. It is not their fault that their parents have been divorced. It is their right to be given care by those who brought them into the world until they are old enough to take care of themselves."

██ We see nothing in the Illinois statutes which supports the conclusion of the court in the Rife case that by "necessary implication" the jurisdiction of a court of chancery to provide for the care and education of a child ends the moment that child attains majority. Where such care and education are necessary to equip the child for adult life and where the financial circumstances of the father are entirely adequate to meet such requirements, equity can and should continue its jurisdiction. The obligation of parents to provide for the education of a child is recognized by the courts of this and other states. Hilliard v. Anderson, 197 Ill. 549 (1902); Esteb v. Esteb, 138 Wash. 174, 244 P. 264 (1926); Underwood v. Underwood, 162 Wash. 209, 298 P. 318 (1931); Titus v. Titus, 311 Mich. 434 (1945); Mapes v. Mapes, 336 Mich. 137 (1953); Stoner v. Weiss, 222 P. 547 (Okla. 1924); Payette v. Payette, 85 N.H. 297, 157 A. 531 (1931); Rawley v. Rawley, 210 P.2d 891 (Cal. App. 1949); Hart v. Hart, 239 Iowa 142, 30 N.W.2d 748 (1948). Esteb v. Esteb, supra, contains the best analysis of this issue. That case involved provision for the education of a daughter 18 years old. The original decree provided for her support until she reached the age of 18, the then legal age of majority, but the law was subsequently changed to make the age of majority 21. Thereupon, a petition to modify the order was filed and the court came to the conclusion that the daughter needed and required education and it extended the order until she became 21. The trial court evidently based this conclusion on the ground that education was a "necessary." Upon review, the Supreme Court of Washington laid down this principle:

364

"Under practically all the authorities, those things are necessary which include shelter, food, clothing, and medical attendance, together with an education. . . . As to the amount of education that should be considered necessary, courts have never laid down a hard and fast rule. [In determining this, the court said it took] into consideration the progress of society, and the attendant requirements upon the citizens of today. . . . That it is the public policy of the state that a college education should be had, if possible, by all its citizens, is made manifest by the fact that the state of Washington maintains so many institutions of higher learning at public expense."

The court quoted from Schouler on Domestic Relations:

"The second duty of the parent is that of education; a duty which Blackstone pronounces to be far the greatest of all in importance."

True, in most of the cases we have cited, the court limited its authority to the period of the child's minority. However, in Hart v. Hart, supra, the Iowa court modified an original decree limiting child support to minority by requiring monthly payments for education until each son had attended college four years, even though that extended beyond the period of minority. In Underwood v. Underwood, supra, the order required the father to pay $1,500 during minority for the education of the child which could be used in a period beyond the child's minority. More recently, the Supreme Court of Washington said that an order to pay for a college education should be based on the father's station in life, and that a rich man might be liable for a college education of an extended and expensive type. Golay v. Golay, 35 Wash.2d 122, 210 P.2d 1022 (1949). In Payette v. Payette, supra, the New Hampshire court ordered contributions to be

made to the support of a 19 year old son attending college, although the son at the time was able to support himself.

In New York no case on this point appears to have been decided by the highest court of the state. In Halsted v. Halsted, 228 App. Div. 298, 239 N.Y.S. 422 (1930), the court, acting upon a petition for modification of a support allowance for two children who had reached their majority, decided that there was no obligation upon the father "in the absence of a showing of *physical* or mental disability." In Cohen v. Cohen, 82 N.Y.S.2d 513, the court held that the prevailing weight of authority now supports the proposition that under proper circumstances a parent could be compelled to provide a college education, citing among others Esteb v. Esteb, supra.

Under a statute authorizing provision in exceptional circumstances for children beyond 17 years of age, the Domestic Relations Court for New York City held that a college education was an "exceptional circumstance" warranting increased support for children over 17 whose parents had enjoyed the benefits of education, travel and high living. Herbert v. Herbert, 98 N.Y.S.2d 846 (1950). The question arose again in Bernstein v. Bernstein, 282 App. Div. 30, 121 N.Y.S.2d 818 (1953). The lower court, on petition for reduction in the support order, had ruled that support payments be suspended while the minor child was regularly employed but that if during minority she entered college, payments should be continued at an increased rate during the time she was a student. The child entered college and the Appellate Division reversed the order on the ground that no testimony had been taken on the financial ability of both parents. The trend in New York appears to support an order for a college education beyond the period of minority where the parent has substantial means.

366

Cases which appear to be contra are Commonwealth v. Wingert, 173 Pa. Super. 613, 98 A.2d 203 (1953) and Morris v. Morris, 171 N.E. 386 (Ind. App. 1930). There also is what appears to us to be dicta to the same effect in Rosenthal v. Rosenthal, 19 N.J. 521, 88 A.2d 655.

 From the foregoing review of the law we have come to the conclusion that it is the obligation of a parent of ample means to support a child incapable of self-support beyond the period of that child's minority and that this obligation includes the duty to provide not only care and bare necessities but also a college education, where that appears desirable in order to better equip the child for adult life.

 Having come to the conclusion that this is a parent's obligation, the question that remains is whether a court of equity can require enforcement of that obligation where it has acquired jurisdiction of the child in a suit for divorce, or whether the court must refer the child to a pauper suit in the County Court, as argued by the father's counsel. We feel that "equity is not so weak of arm or lame of foot." From its earliest origins equity was designed to avoid the rigidity of common-law writs and procedure and to adjust itself to the requirements of justice. One of the fundamental rules is that a court of equity having taken jurisdiction will retain it for all purposes and do complete justice between the parties. Pliley v. Phifer, 1 Ill.App.2d 398, 409; White v. MacQueen, 360 Ill. 236, 246. The Chancery Act (Ill. Rev. Stat. 1955, Ch. 22, Sec. 42) provides that in a chancery proceeding a court may make such decrees as shall be just and may enforce such decrees in various ways therein set forth ". . . by the exercise of such other powers as pertain to courts of chancery, and which may be necessary for the attainment of justice." Recently, in Cardenas v. Cardenas, 12 Ill.App.2d 497, we held that although there was no statute which made provision therefor,

a court of chancery had the power to make a post-decretal order for the care and custody of a child of the parties to an annulment suit, and imposed upon the father the obligation to provide such care and custody. Indeed, there appears to have been no statutory authority for an annulment proceeding, courts of chancery having assumed jurisdiction when social necessity compelled it. The innumerable utterances of chancellors and of courts who have reviewed their decrees regarding the protective and benign policy of equity toward children who come within their jurisdiction and the frequent designation of children as "wards of the court" make the answer to the question under discussion clear.

The chancellor was in error in assuming that he had no jurisdiction to provide for the care and education of the child in this case beyond the period of her minority. He should rehear the matter and determine what care and education is suitable and necessary to equip her for adult life, even though that care and education extend beyond the period of her minority, and should require the father to make adequate provision therefor. In so doing he should take into consideration the large means of the father and the incapacity suffered by the daughter as a result of her illness. He should further take into account the fact that a large portion of the funds used to defray the cost of her illness, $5,000, was derived from an insurance policy taken out and paid for by a third person. That payment may not be the basis for a legal claim on the part of the mother or the third person but it constitutes an equity which the court can well consider in determining the father's further obligation with respect to his child.

The order of December 15, 1953 should be modified to include provisions for the care and education of the child as hereinbefore stated. The order of July 22,

1955, allowing master's fees and attorneys' fees, should be modified by a reduction of 20 per cent thereof. The cause is remanded with directions to take such further proceedings as are consistent with the views herein expressed.

Orders affirmed in part, reversed in part, and cause remanded with directions.

ROBSON, P. J. and McCORMICK, J., concur.