Evelyn Maitzen, Appellee, v. Richard Maitzen, Appellant.

**Gen. No. 47,721.**

First District, First Division.
November 30, 1959.
Rehearing denied February 9, 1960.
Released for publication February 9, 1960.

Daniel A. Costigan, of Chicago (Richard J. Gleason and Ralph L. Stavins, of counsel) for defendant-appellant.

Gomberg, Missner, and Lacob, of Chicago (Sidney D. Missner, of counsel) for plaintiff-appellee.

JUSTICE SCHWARTZ delivered the opinion of the court.

This is an appeal from an order requiring defendant to pay $150 per month for the education of his daughter for a period of four years. The question presented to us is whether in a divorce case a parent may be ordered to provide a college education for an adult child.

The parties to this action were divorced by decree of the Superior Court on July 28, 1943. Plaintiff was awarded custody of the daughter, the sole issue of the marriage, and defendant was ordered to pay child support of $8 per week. The decree was modified August 19, 1954, increasing payments to $50 per week. On December 18, 1958, when the child was seventeen, the court again modified the decree, requiring defendant to pay $150 per month, as before stated.

The evidence shows that defendant has an interest in a business trust which compensates him at the rate of twenty-two and one-half percent of the earnings of the business during the life of his mother. After her death, his interest increases to thirty percent. In the event the business is discontinued or sold during his mother's lifetime, defendant becomes entitled to twenty-two percent of the proceeds, but if it is dis-

continued or sold after her death, his interest increases to thirty percent. His gross income in 1957 was $39,000, and his estimated gross income for 1958 was $36,000. His income after taxes was about $28,000. Defendant estimated the worth of the business to be in excess of $400,000, and he has property worth about $56,000. He has remarried, and there are two children of the second marriage, nine and thirteen years old. Linda, the child of the broken marriage, has shown an aptitude for higher education and training. She has maintained an S average (the highest grade) throughout high school, and stood third in a class of 130.

■ Defendant makes two points. The first is a constitutional question, to-wit: that the order of the trial court is a violation of the separation of powers clause (Article III) of the Constitution of Illinois. This court cannot entertain such an assignment of error. Defendant, having taken his appeal to this court instead of the Supreme court, is deemed to have waived the constitutional question. Chasteen v. City of Decatur, 21 Ill.App.2d 496, 158 N.E.2d 446 (1959); Rust v. Holland, 15 Ill.App.2d 369, 146 N.E.2d 82 (1957); Anderson v. Industrial Molasses Corp., 11 Ill.App.2d 210, 136 N.E.2d 536 (1956). We may therefore proceed directly to his second point, that is, whether the findings and orders of the court are contrary to the provisions of the Divorce Act.

■ ■ It is true that the general jurisdiction of equity does not encompass divorce and that the court looks to the statute for the measure of its authority to grant a divorce. Jurisdiction over children of broken homes, however, is not dependent upon statutes, as defendant contends, but is an inherent power of equity. Over one hundred years ago our Supreme court expressed this principle in Cowls v. Cowls, 3 Gilm. (8 Ill.) 435 (1846) at page 438:

35

"It becomes clear, then, that our legislature by providing that 'when a divorce shall be decreed, it shall and may be lawful for the court to make such order touching the alimony and maintenance of the wife, the care, custody and support of the children, or any of them, as from the circumstances of the parties and the nature of the case shall be fit, reasonable and just,' has conferred no new authority or jurisdiction upon the court. It was by its original jurisdiction clothed with the same powers before."

We followed the rule, thus expressed, in Cardenas v. Cardenas, 12 Ill.App.2d 497, 140 N.E.2d 377 (1956), in which we held that a court of equity had jurisdiction to provide for the care and custody of children born to a marriage which was subsequently annulled. Petition for leave to appeal was denied in that case.

 The question, therefore, should be stated thus—does the statute relating to divorce, custody and support in any way diminish the inherent power of equity over children of broken marriages? The pertinent portions of the Divorce Act, Ill. Rev. Stat., ch. 40, sec. 19 (1959) provide that the court upon granting a divorce:

". . . may make such order touching . . . care, custody and support of the children . . . as, from the circumstances of the parties and the nature of the cases, shall be fit, reasonable and just, . . . [and] may, on application, from time to time, make such alterations in . . . the care, custody and support of the children, as shall appear reasonable and proper."

Defendant's conclusion that we must interpret the word "children" to mean minor children is not supported by the language of the statute nor attendant circumstances. The term "children" is ambiguous. It may mean a young person or offspring of any age. See Black, Law Dictionary (4th ed. 1951); Funk &

36

Wagnall's New "Standard" Dictionary (1958). Its use must be examined and its meaning determined within the context of the particular statute. As was stated in Strom v. Strom, 13 Ill.App.2d 354, 142 N.E.2d 172 (1957) and Freestate v. Freestate, 244 Ill. App. 166 (1927), the word "children" in the statute is not qualified by any word or phrase limiting its application to minor children. (Contra, Rife v. Rife, 272 Ill. App. 404 (1933), distinguished in Strom v. Strom, supra.)

■ The Divorce Act does not set forth definitions from which its intendment with regard to the word "children" may be ascertained. Freestate v. Freestate, supra, was decided in 1927. Strom v. Strom, supra, was decided in 1957. In both cases it was held that the word "children," as it appeared in the Divorce Act was not limited to minor children. The legislature has been in session twice since the Strom decision and has not seen fit to disturb this interpretation, although, as defendant says, the case quickly became well known. When a court or administrative agency construes a statute and that construction is not disturbed by subsequent legislation on the point decided, it is presumed that the court's construction is in harmony with legislative intent. Bell v. South Cook County Mosquito Abatement Dist., 3 Ill.2d 353, 121 N.E.2d 473 (1954); People ex rel. Spiegel v. Lyons, 1 Ill.2d 409, 115 N.E.2d 895 (1953).

The construction of a statute is in modern times moving away from the stubborn determination to extract a meaning when obviously none was intended. In the instant case, the statute was passed more than one hundred years ago. At that time, only a fraction of the population attended high school, and a fraction of that fraction attended college. The legislature had no intention, and expressed none in this Act, with respect to the age at which a parent was exonerated

37

from liability for child support and care. Its attention was focused on the question of jurisdiction, and its purpose was to make clear that jurisdiction included the function of providing for the care, custody and support of children. In other words, its collective mind was directed not to the detail of age, but to the general question of a divorce court's jurisdiction. In the days when this Act was passed, children went to work long before they reached their majority. But even then, education beyond the high school level for children of average or better scholarship was the common aspiration of American parents. Today, it is regarded as a necessity. In a normal household, parents, except as limited by compulsory education laws, direct their children as to when and how they should work or study. That is on the assumption of a normal family relationship, where parental love and moral obligation dictate what is best for the children. Under such circumstances, natural pride in the attainments of a child, such as the one here involved, would demand of parents provision for a college education, even at a sacrifice.

When we turn to divorced parents—a disrupted family—society cannot count on normal protection for the child, and it is here that equity takes control to mitigate the hardship that may befall children of divorced parents. Shall we presume, then, that all obligation ends with minority? The statute does not say so, any more than it requires a parent to care for a child who is self-sustaining at sixteen. It leaves that unspoken. We should rather assume that the legislature of that day, more than one hundred years ago, contemplated that it had better be left unsaid, so that the mores and necessities of the times could determine what a wise discretion should do. Rather than fill in the interstice with a numeral, whether it be

38

fifteen or over, it left that to be decided as the circumstances of a particular case should warrant.

The legislature has shown itself capable of expression when it wishes to limit or expand the area intended to be encompassed by a statute such as the one in question. Thus, in the Divorce Act, at Section 14, the statute makes specific reference to the custody of minor children during the pendency of a suit. Ill. Rev. Stat., ch. 40, sec. 14 (1959). In the Uniform Reciprocal Enforcement of Support Act, section 51(c), the statute specifically defines "child" to include, *inter alia,* a child actually or apparently under the age of eighteen years, and a child of eighteen years and over who is unable to maintain himself and is likely to become a public charge. Ill. Rev. Stat., ch. 68, sec. 51(c) (1959). In our Public Assistance Code, Section 601, the legislature sets forth its definition of "dependent child" so as to include children under eighteen if in regular attendance at school, or under sixteen if not, as qualified by additional requirements. Ill. Rev. Stat., ch. 23, sec. 601 (1959). The Family Court Act, Section 2001, defines as wards of the state, subject to care, guardianship or control of the court for purposes of the Act, all persons under the age of twenty-one. Ill. Rev. Stat., ch. 23, sec. 2001 (1959).

From the foregoing, it can be seen that the word "child" or "children" is used in many different contexts, for many different purposes. We may infer that the legislature saw fit not to define "children" for purposes of Section 19 of the Divorce Act, but to leave that to the future discretion of a court. One legal scholar states the problem in the following language:

"When a legislature enacts a statute, it enacts certain words, and nothing else. It knows that these words will come up for interpretation by the courts and administrative agencies, because it knows that

39

they will have to apply its words to particular cases, and particular occasions. The only intention of the legislature is that the courts and agencies shall interpret its words in the immediate presence of the particular occasion. However wise a legislature may be, however foresighted, even prophetical, it is dealing in nothing more than foresight. A legislature is dealing exclusively with what may happen. The courts and the agencies are at grips with what did happen and with what is happening. They would do better to recognize what is expected of their function, and do their best to perform it, . . . . (Curtis, A Better Theory of Legal Interpretation, in Jurisprudence in Action, 131, 143 (1953).)"

In Strom v. Strom, 13 Ill.App.2d 354, 142 N.E.2d 172 (1957), we held that a father of ample means must provide a college education for his adult, physically afflicted daughter. In Freestate v. Freestate, 244 Ill. App. 166 (1927), our court similarly required a father to support his physically afflicted adult daughter. On the other hand, the court in Rife v. Rife, 272 Ill. App. 404 (1933) decided not to require a divorced father to support his invalid daughter, where the father was financially unable to do so. In Kreitner v. Kreitner, 285 Ill. App. 602, 2 N.E.2d 569 (1936) (memorandum decision), the court refused to extend support payments to an adult, well educated, healthy daughter. We believe that the facts under consideration in the case at bar fall under the reasoning of the Freestate and Strom cases, supra.

Outside the state, authority in well reasoned cases has held that a court of equity should require divorced parents to contribute toward the support and education of their adult children when circumstances so indicate. In Hart v. Hart, 239 Iowa 142, 30 N.W.2d 748 (1948), the court ordered a father to provide his sons with sufficient funds so that they could re-

40

ceive four years of college education, extending into their adult years. In Underwood v. Underwood, 162 Wash. 204, 298 Pac. 318 (1931), the court required a father to contribute to a fund during the child's minority for the purpose of providing for his education which would have extended beyond his minority. In Stoner v. Weiss, 222 Pac. 547 (Okla. 1924), the court compelled a divorced father to contribute funds to be used for the support and education of his minor child in the future, where such payments did not work a hardship on any of the involved parties. In Golay v. Golay, 35 Wash.2d 122, 210 P.2d 1022 (1949), the court in a statement not necessary to the decision but representative of the recent trend, indicated that an order requiring a divorced father to pay for a college education should be based upon the father's station in life, and that an affluent father might be compelled to provide expensive and extended college education. In Mapes v. Mapes, 336 Mich. 137, 57 N.W.2d 471 (1953), the court construed a statute which provided that a court could, in its discretion, in exceptional circumstances extend support requirements of a father for a child beyond the age of seventeen, so as to provide for his continued education. In Titus v. Titus, 311 Mich. 434, 18 N.W.2d 883 (1945), the court considered that a college education was an "exceptional circumstance" under its statute in the case of a twenty year old girl, even though the child's aptitude for higher education was questionable. In Herbert v. Herbert, 98 N.Y.S.2d 846 (1950), the court held that financial ability and background of the parents in itself was an "exceptional circumstance" which warranted requiring the father to provide his child with a college education, under a statute similar to that of Michigan. As we have heretofore noted, courts of equity have always had jurisdiction over children of broken homes, and the Michigan and New York courts

41

could have decided these cases in a similar manner even in the absence of statute.

■ The public policy of this state, that a college education be given children whenever possible, is evidenced by the many institutions of higher education maintained by the state. A statute recently enacted enables students who need funds to sign legally binding notes in furtherance of a college education. Ill. Rev. Stat., ch. 29, sec. 43 (1959). A divorced parent should not, however, expect his children to rely on the bounty of others when he has ample means to provide for them. It is well known that tuition charges made by various educational institutions do not cover actual costs incurred in enabling students to complete their education. The policy of the federal government also encourages higher education by providing an incentive by way of income tax deductions to taxpayers whose children attend institutions of higher learning. See Int. Rev. Code of 1954, sections 151(e)(1)(B); 152(d)(2).

■ The chancellor did not make an independent decision that this child should go to college. Both parents are in chancery. One, the mother, has had custody of the child since she was two years old. She knows the child's talents and abilities, and she has decided that the child shall attend a university. The father expresses no interest in this proposition. He has had practically no communication with his daughter since her babyhood. Her industry, scholarship and high aspirations do not interest him. With utter indifference to those qualities which would evoke pride in the normal parent, he takes the position that he does not want to contribute toward the cost of sending her to school. The court approved the judgment of the one parent who has a natural relationship with the child. In our opinion this was a proper exercise of a discretionary power.

42

■ Defendant contends that the order providing for payment of support amounting to $50 per week, entered when the child was thirteen years old, provided ample funds to allow some money to be set aside to pay the expenses of her education after she reached majority. Plaintiff denied that there was any discussion of a college education for the child at the time the order was entered. No mention is made of provision for a college education in the order or decree. In the absence of any such reservation, the order and decree are controlling. Whitney v. Whitney, 15 Ill.App.2d 425, 146 N.E.2d 800 (1957).

Judgment affirmed.

DEMPSEY, P. J. and McCORMICK, J., concur.