2024 IL App (1st) 230270

SECOND DIVISION
March 29, 2024

No. 1-23-0270

IN THE APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | |
| | ) | Appeal from |
| RHONDA V. MORIARTY, n/k/a Rhonda Jensen-Moriarty, | ) | the Circuit Court |
| | ) | of Cook County |
| Petitioner-Appellant, | ) | |
| | ) | 2012-D-000158 |
| and | ) | |
| | ) | Honorable |
| BRAD LEE MORIARTY, | ) | Dominique C. Ross, |
| | ) | Judge Presiding |
| Respondent-Appellee. | ) | |

JUSTICE McBRIDE delivered the judgment of the court, with opinion.
Justices Ellis and Cobbs concurred in the judgment and opinion.

**OPINION**

¶ 1      Pursuant to his divorce judgment with Rhonda Jensen-Moriarty, Brad Lee Moriarty made his last child support payment when the youngest of their four children was over 18 and had graduated from high school. Rhonda subsequently petitioned for adult disabled child support for their third child, who was then a 21-year-old high school graduate still residing with her mother and alleged to be incapable of ever living independently because of autism spectrum disorder and other disabilities. The circuit court denied the petition, finding that the child was "already emancipated" by virtue of her age and completion of high school. Rhonda contends this was a misinterpretation of the Illinois statute regarding nonminor disabled child support—section

1-23-0270

513.5(a) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/513.5(a) (West 2018)).

¶ 2   Rhonda and Brad married in 1988, separated in 2007, and divorced in 2012 by way of a judgment for dissolution of marriage which incorporated a marital settlement agreement (MSA). Rhonda was given sole care, custody, and control of the children, who were then ages 17, 14, 13, and 10. Article IV of the MSA addressed child support. Paragraph 4.1 required Brad to pay monthly child support until the youngest of the four "reached 18 along with having graduated from high school (whichever is later) or otherwise being emancipated as otherwise [*(sic)*] defined herein." The next paragraph in article IV stated:

"4.2 TERMINATION OF CHILD SUPPORT: The child support obligation of BRAD to pay child support [*sic*] hereunder shall forever and wholly terminate upon the first to occur of the following events, which constitute 'emancipation' events for child support purposes:

a) the youngest minor child graduating from high school;

b) the youngest minor child reaching the age of 18 as long as said child has graduated from high school;

c) the youngest minor child no longer residing in the residence of the mother on a permanent basis;

d) the youngest minor child beginning full-time employment other than during summer months while said child is working towards a secondary educational diploma; or

e) the death of a minor child, combined with the emancipation of all other minor children, as herein defined."

¶ 3    Article 7 of the MSA was titled "EMANCIPATION EVENT" and consisted of only one paragraph, which stated:

"7.1 Except for [the] child support situation, with its own definition of 'emancipation' as set forth in said Article, an 'emancipation event' for a child shall occur or be deemed to have occurred upon the earliest to happen of any of the following, at which time the [parties'] obligations for each individual child as detailed in this [MSA] shall terminate:

a. The child[ ] reaching majority ***;

b. The child's marriage;

c. The child[ ] having a permanent residence away from the permanent residence of RHONDA. ***

* * *

f. The child[ ] engaging in full-time employment ***."

¶ 4    It is undisputed that Brad was no longer required to make child support payments when he ended them in mid-2019.

¶ 5    Rhonda filed the petition at issue on September 29, 2019, when Lindsey, the third of the four children, was 21, contending that Lindsey required long-term financial support due to disabilities that dated to at least the age of six when she had been diagnosed with autism spectrum disorder. Rhonda alleged that Lindsey was also disabled by attention deficit hyperactive disorder, generalized anxiety disorder, and obsessive-compulsive disorder. She asked for financial support as well a resumption of the parties' obligations to maintain life insurance coverage that benefited Lindsey and to share the expenses of her uninsured medical, dental, optical, and mental health care. According to Rhonda's testimony in support of the petition, Lindsey had struggled since very

early childhood with emotions, comprehension, and communication. At the suggestion of her first grade teacher, Lindsey received a neuropsychological evaluation. The testing resulted in her transfer to a different school for the second grade, where she received "special education services" pursuant to an individualized education plan (IEP) that was updated until Lindsey graduated from high school. Lindsey's IEP team recommended that she next attend the New Endeavors Transition program, to receive training in life skills and social skills, and assistance with job placement. While Lindsey was at New Endeavors Transition, a staff member of the Illinois Department of Human Services recommended her for part-time employment at an assisted living and nursing home, where she continues to work for $11.20 per hour as part of the waitstaff. Lindsey was declared disabled by the Social Security Administration and receives disability benefits of $29.74 per month. She has a disabled Illinois identification card (not a driver's license). She resides with her mother because she "does not have the capacity to be self-supportive now or in the future." When Rhonda sought estate planning assistance in 2018, she learned that Lindsey might qualify for nonminor child support due to her disabilities, and the petition at issue soon followed. Its resolution was delayed for several years. However, between July and December 2022, a domestic relations judge heard testimony and argument.

¶ 6    In addition to Rhonda's testimony, the court heard from Donna Woods, M.D., a board-certified child and adolescent and adult psychiatrist with 22 years' experience. Dr. Woods had been treating Lindsey for 12 years and was familiar with her IEPs and neuropsychological evaluations. She would see Lindsey as infrequently as every three months when she was stable but as often as every two weeks when "in a crisis." Their current appointments were approximately six weeks apart and were primarily for medication management. Dr. Woods testified that Lindsey's

psychiatric and medical disorders are affecting her major life activities by making it difficult for her to care for herself and to learn, concentrate, communicate, and interact with others. She is incapable of maintaining a job "in a regular occupation" because she "can't take feedback," becomes belligerent and argumentative, and "explodes on people." She "really struggles with interacting with others" because she "doesn't get social cues," "doesn't have empathy," interrupts people in conversation, and talks "very rapidly." Autism causes her to be rigid about maintaining a routine, so that she will, for example, demand and scream at Rhonda to take her to a Starbucks coffee shop on the way to work, even if the stop will make her late. Lindsey also lacks insight into the impact of her behavior, such that during their last appointment, Lindsey was screaming at Rhonda throughout and accusing her of falsely telling Dr. Woods that Lindsey was "very irritable," when in fact, Lindsey "has been struggling with emotional dysregulation and irritability and gets very reactive." Dr. Woods opined that Lindsey is unable to live independently because she can neither drive nor manage transportation on her own and is unable to cook, "understand money," or "pay her own bills." Also, Lindsey has been "disabled" since childhood within the meaning of the Act.

¶ 7     Brad's attorney cross-examined Rhonda and Dr. Woods but did not call other witnesses.

¶ 8     The judge denied Rhonda's petition in January 2023. The judge determined that Lindsey did not come within the terms of section 513.5(a), as that section authorizes support when the child "has attained majority [but] is mentally or physically disabled and not otherwise emancipated" (750 ILCS 5/513.5(a) (West 2018)), but Lindsey was already "21 years old and emancipated." Section 513.5(a) also specifies that "the disability that is the basis for the application for support must have arisen while the child was eligible for support under Section 505 or 513 of this Act."

*Id.* Accordingly, the judge consulted section 505 of the Act (*id.* § 505), which is the general child support statute, and section 513 of the Act (*id.* § 513), which concerns educational expenses, but found that Lindsey did not qualify for support under either of those sections because she had "already [become] emancipated" by virtue of being "over the age of 19 and graduated high school" when Rhonda filed the petition. Lindsey was also emancipated within the meaning of the parties' MSA. Having found that the petition was "not timely filed," the circuit court did not reach the question of whether Lindsey was disabled within the meaning of the Act.

¶ 9     This is a case of first impression regarding the timing of a petition for adult disabled child support pursuant to section 513.5(a) of the Act (*id.* § 513.5(a)).

¶ 10     Rhonda completed her opening appellate brief in September 2023. In December 2023, when Brad had not responded, we ordered the case to be taken on the appellant's brief only. We will consider the merits of the appeal because the record is simple and the claimed error can easily be decided without the aid of an appellee's brief. *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

¶ 11     Rhonda's arguments about the meaning of the Act and the MSA pose questions of law, which we review *de novo. In re Marriage of Dynako*, 2021 IL 126835, ¶¶ 14-15. With statutory interpretation, the fundamental principle is to ascertain and give effect to the legislature's intent. *Id.* ¶ 14. The plain language of the statute is the best indication of that intent. *Id.* When statutory language is clear and unambiguous, a court may not depart from the plain language and meaning of the statute by creating exceptions, limitations, or conditions that the legislature did not express. *Id.* The court will examine the statute as a whole, considering all of its relevant parts. *In re Christopher K.*, 217 Ill. 2d 348, 364 (2005). Words and phrases are to be interpreted in light of any

other relevant provisions of the statute. *In re Marriage of Edelman*, 2015 IL App (2d) 140847, ¶ 13.

¶ 12     Additionally, where the statute's language is clear and unambiguous, we will not resort to extrinsic construction aids. *Christopher K.*, 217 Ill. 2d at 364. Principles of contract interpretation govern the MSA. *Dynako*, 2012 IL 126835, ¶ 15; *In re Marriage of Sweders*, 296 Ill. App. 3d 919, 922 (1998). We ascertain the contracting parties' intent from the plain language of the MSA itself. *Sweders*, 296 Ill. App. 3d at 922. When MSA terms are unambiguous, they must be given their plain and ordinary meaning. *Id.* "A trial court has broad discretion in determining the necessity for and the amount of child support, and its decision will not be set aside unless the trial court abused its discretion or its order is contrary to the manifest weight of the evidence." *In re Marriage of Thurmond*, 306 Ill. App. 3d 828, 832 (1999); *In re Marriage of Mitchell*, 103 Ill. App. 3d 242, 249 (1981). A determination is contrary to the manifest weight of the evidence only when an opposite conclusion is clearly apparent or when the court's findings appear to be unreasonable, arbitrary, or not based upon the evidence. *In re Marriage of Romano*, 2012 IL App (2d) 091339, ¶ 44.

¶ 13     The provisions of the Act "do not extend the parental obligation for support beyond minority except in limited statutory situations" or "unless otherwise agreed in writing or by court order." *Finley v. Finley*, 81 Ill. 2d 317, 326 (1980).

¶ 14     Section 513.5 is one of those rare exceptions for adult support, providing as follows:
    "Support for a non-minor child with a disability.

        (a) The court may award sums of money out of the property and income of either or both parties or the estate of a deceased parent, as equity may require, for the support of a child of the parties who has attained majority when the child is mentally or physically

disabled and not otherwise emancipated. The sums awarded may be paid to one of the parents, to a trust created by the parties for the benefit of the non-minor child with a disability, or irrevocably to a special needs trust, established by the parties and for the sole benefit of the non-minor child with a disability, pursuant to subdivisions (d)(4)(A) or (d)(4)(C) of 42 U.S.C. 1396p, Section 15.1 of the Trusts and Trustees Act, and applicable provisions of the Social Security Administration Program Operating Manual System.[1] An application for support for a non-minor disabled child may be made before or after the child has attained majority. Unless an application for educational expenses is made for a mentally or physically disabled child under Section 513, the disability that is the basis for the application for support must have arisen while the child was eligible for support under Section 505 or 513 of this Act.

(b) In making awards under this Section, or pursuant to a petition or motion to decrease, modify, or terminate any such award, the court shall consider all relevant factors that appear reasonable and necessary, including:

(1) the present and future financial resources of both parties to meet their needs, including, but not limited to, savings for retirement;

(2) the standard of living the child would have enjoyed had the marriage not been dissolved. The court may consider factors that are just and equitable;

---

[1] Because Rhonda petitioned on September 19, 2019, we are analyzing the version of the statute that was in effect until December 31, 2019. Subsequent minor revisions have been made to the statute but none of them affected the language at issue. In paragraph (a), as of 2020, the phrase "Section 15.1 of the Trusts and Trustees Act" was changed to "Section 1213 of the Illinois Trust Code" (Pub. Act 101-48, § 1608 (eff. Jan. 1, 2020) (amending 750 ILCS 5/513.5)), and then, effective 2022, "Section 1213 of the Illinois Trust Code" was changed to "Section 509 of the Illinois Trust Code" (Pub. Act 102-279, § 7 (eff. Jan. 1, 2022)). Also, effective 2022, in paragraph (a), the phrase "irrevocably to a special needs trust" was changed to "irrevocably to a trust for a beneficiary with a disability." *Id.*

(3) the financial resources of the child; and

(4) any financial or other resource provided to or for the child including, but not limited to, any Supplemental Security Income, any home-based support provided pursuant to the Home-Based Support Services Law for Mentally Disabled Adults, and any other State, federal, or local benefit available to the non-minor disabled child.

(c) As used in this Section:

A 'disabled' individual means an individual who has a physical or mental impairment that substantially limits a major life activity, has a record of such an impairment, or is regarded as having such an impairment.

'Disability' means a mental or physical impairment that substantially limits a major life activity." 750 ILCS 5/513.5 (West 2018).

¶ 15    This language codified Illinois decisional law indicating that a parent may be required to support a child who has attained majority but is mentally or physically disabled. See *In re Marriage of Kennedy*, 170 Ill. App. 3d 726, 732 (1988) (analyzing the statute when it was known as paragraph 513 rather than 513.5) (citing *Freestate v. Freestate*, 244 Ill. App. 166, 167 (1927) (regarding a parent's petition 10 years after divorce, seeking support for a 23-year-old child who had been "an invalid since she was two years old," the court found that support could be ordered if the parent made a sufficient showing on remand) and *Strom v. Strom*, 13 Ill. App. 2d 354, 367-68 (1957) (with respect to a parent's petition 12 years after divorce, seeking increased child support for a child who was disabled by polio, the court determined "it is the obligation of a parent of ample means to support a child incapable of self-support beyond the period of that child's minority" and to provide for that child's "care and education")). This support obligation has been

codified since 1971. *In re Guardianship of Sanders*, 2017 IL App (4th) 160502, ¶ 17.

¶ 16    As just set out fully above, the first sentence of section 513.5(a) limits awards "as equity may require, for the support of a child of the parties who has attained majority when the child is mentally or physically disabled and not otherwise emancipated." We read this sentence to authorize support for a disabled child, provided that the person "has attained majority" and is "not otherwise emancipated." The arrival at majority age and emancipation are two distinct life events. However, as discussed below, the circuit court seems to have conflated Lindsey's age with emancipation because immediately after quoting the first sentence of section 513.5(a), the court concluded, "In this case, the adult child, Lindsey was 21 years old and emancipated." The court cited no statutory language which suggested that the General Assembly used the terms majority and emancipation synonymously and cited no testimony or evidence about emancipation.

¶ 17    Majority age and emancipation have different meanings. Generally, a child will be considered emancipated "when he reaches the age of 18, at which time the child attains majority." *Sweders*, 296 Ill. App. 3d at 922 (citing *In re Marriage of Ferraro*, 211 Ill. App. 3d 797, 799-800 (1991)). However, a minor child may become emancipated under either the common law or by statute. *In re Marriage of Baumgartner*, 237 Ill. 2d 468, 479 (2010). Illinois precedent indicates that a self-emancipated child is one who has not reached majority but is " 'physically and mentally able to take care of himself, [has] voluntarily abandon[ed] the parental roof and [left] its protection and influence, and [gone] out into the world to fight the battle of life on his own account.' " *In re Marriage of Donahoe*, 114 Ill. App. 3d 470, 475 (1983) (quoting *Iroquois Iron Co. v. Industrial Comm'n*, 294 Ill. 106, 109 (1920)); see *In re Marriage of Walters*, 238 Ill. App. 3d 1086, 1091 (1992) ("It is clear that emancipation includes, but is not limited to, reaching the age of majority.").

The statutory path to emancipation is through the Emancipation of Minors Act, whose stated purpose is to

> "provide a means by which a mature minor who has demonstrated the ability and capacity to manage [the minor's] own affairs and to live wholly or partially independent of [the minor's] parents or guardian, may obtain the legal status of an emancipated person with power to enter into valid legal contracts." 750 ILCS 30/2 (West 2018).

Similarly, a legal dictionary defines "Emancipation" as:

> "1. The act by which one who was under another's power and control is freed. 2. A surrender and renunciation of the correlative rights and duties concerning the care, custody, and earnings of a child; the act by which a parent (historically a father) frees a child and gives the child the right to his or her own earnings. *** This act also frees the parent from all legal obligations of support. Emancipation may take place by agreement between the parent and child, by operation of law (as when the parent abandons or fails to support the child), or when the child gets legally married or enters the armed forces." Black's Law Dictionary (11th ed. 2019).

¶ 18    Thus, broadly speaking, emancipation from one's parents occurs when one is able to care for oneself, live independently, and provide one's own financial support. There is no "bright-line standard" for emancipation, and "the unique facts and circumstances of each case must be evaluated." (Internal quotation marks omitted.) *Baumgartner*, 237 Ill. 2d at 480.

¶ 19    The record indicates that Lindsey was "not otherwise emancipated" because, despite being of majority age, a high school graduate, and a part-time employee with accommodations by her employer, Lindsey is not " 'mentally able to take care of [her]self,' " and has not left the

" 'protection and influence' " of her mother's home. *Donahoe*, 114 Ill. App. 3d at 475 (quoting *Iroquois Iron Co.*, 294 Ill. at 109). Nor has Lindsey "demonstrated the ability and capacity to manage [her] own affairs and to live wholly or partially independent of [her] parents or guardian." 750 ILCS 30/2 (West 2018). Furthermore, the testimony about Lindsey's earnings indicates that she is not capable of supporting herself, given that she is not generally employable, works part-time for an employer that accommodates her disabilities but pays below minimum wage, and receives a monthly federal disability payment that is less than $30. The circuit court's finding that Lindsey "was 21 years old and emancipated" was contrary to the meaning of Act and the manifest weight of the evidence. By ruling based on Lindsey's age, the circuit court nullified the statutory phrase "not otherwise emancipated" and changed the meaning of the Act.

¶ 20    Briefly, the second sentence of section 513.5(a) restricts where the payments may be deposited. We may disregard this sentence because it does not speak to the issue of the timing of a parent's petition.

¶ 21    The third sentence allows an application to be filed "before or after the child has attained majority."

¶ 22    The concluding sentence of 513.5(a) indicates that "the disability *** must have arisen while the child was eligible for support under either Section 505 or 513 of this Act." 750 ILCS 5/513.5(a) (West 2018). The first of those two sections—section 505—is Illinois's general child support statute and authorizes support for "any child under age 18 and any child age 19 or younger who is still attending high school" (*id.* § 505(a)), and the other section—section 513—is specific to children's educational expenses "incurred no later than the student's 23rd birthday, except for good cause shown, but in no event later than the child's 25th birthday" (*id.* § 513(a)). We read the

fourth sentence to narrow awards to instances when a child's disability manifested while they were eligible either for general child support pursuant to section 505 or reimbursement of educational expenses pursuant to section 513. In our opinion, the fourth sentence is about the timing of a child's disability, rather than the timing of a section 513.5(a) application. The circuit court seems to have misconstrued this sentence as a limitation on the timing of Rhonda's petition by finding, "There is no provision contained within 750 ILCS 5/505 or 750 ILCS 5/513 that allows for the award of support from Respondent to Petitioner on behalf of Lindsey as an adult disabled child after Lindsey reached the age of 18 years or graduated high school by the age of 19 years." The circuit court erred because the fourth sentence was not about the timeliness of Rhonda's petition.

¶ 23 Although we quoted the full statute above, we are limiting our discussion to the four sentences in section 513.5(a). See *id.* § 513.5(a). We need not analyze the language of section 513.5(b), which lists factors the circuit court shall consider when making a section 513.5 award, such as the standard of living the child would have enjoyed had the marriage not been dissolved. *Id.* § 513.5(b). Nor do we need to contemplate section 513.5(c), which defines the terms " 'disabled' " or " 'Disability,' " neither of which affect the outcome of this appeal. See *id.* § 513.5(c).

¶ 24 Reading the first paragraph as a whole, along with the record, we find that Rhonda's petition for adult disabled child support (1) was appropriately timed, even after Lindsey's eighteenth birthday (consistent with the third sentence's specification that an "application for support for a non-minor disabled child may be made before or after the child has attained majority" (*id.* § 513.5(a))); (2) was concerning a disabling condition that Rhonda alleged arose during Lindsey's childhood (in conformance with the fourth sentence's limitation that "the disability that

is the basis for the application for support must have arisen while the child was eligible for support under Section 505 or 513 of this Act" (*id.*)); and (3) sought support for an adult child who was "not otherwise emancipated" (satisfying the first sentence, which states, "The court may award sums of money out of the property and income of either or both parties or the estate of a deceased parent, as equity may require, for the support of a child of the parties who has attained majority when the child is mentally or physically disabled and not otherwise emancipated" (*id.*)).

¶ 25    We also find that the MSA was not relevant to the proceedings, because it was limited to Rhonda and Brad's obligations to their children due to their minority, but these proceedings concerned Rhonda and Brad's subsequent obligations to Lindsey due to a disabling condition that persisted from her minority to majority when she was not otherwise emancipated. Article 4 of the MSA, titled "CHILD SUPPORT," indicated that Brad's "obligation *** to pay child support *hereunder* shall forever and wholly terminate upon the first to occur of the following events." (Emphasis added.) Article 7 of the MSA, regarding "EMANCIPATION EVENT," specified that upon emancipation, "the [parties'] obligations for each individual child *as detailed in this Marital Settlement Agreement* shall terminate." (Emphasis added.) The parties' obligations under the MSA included, for example, maintaining the children's health insurance coverage. Articles 4 and 7 spoke of child support and emancipation within the bounds of the MSA. Neither article broached the topic of supporting any of the children into adulthood. If, by some stretch of the imagination the MSA did address Lindsey's need for child support as an adult, then those terms were not the final word on the subject. On page 19 of the MSA, Rhonda and Brad agreed, "E. *Except for those provisions concerning* custody, *child support* or welfare of the minor children, this Judgment *** and [MSA] shall not be modifiable by any subsequent Court of competent jurisdiction." (Emphasis

added.) Thus, on page 19, the parties acknowledged that child support payments were subject to judicial modification. All in all, the MSA was not on point, and it was unnecessary for the circuit court to determine whether Lindsey was emancipated for purposes of the MSA or conclude, "There is no provision contained in the parties['] MSA that allows for support of Lindsey beyond [the date] when the parties['] youngest child *** reached the age of 18 years or graduated high school by the age of 19 years."

¶ 26    For these reasons, we vacate the dismissal of Rhonda's petition for disabled, nonminor child support as "not timely filed," and we remand for further proceedings consistent with this order.

¶ 27    Reversed and remanded.

*In re Marriage of Moriarty*, **2024 IL App (1st) 230270**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2012-D-000158; the Hon. Dominique C. Ross, Judge, presiding. |
| **Attorneys for Appellant:** | Nicholaus J. Dilly and Simul S. Jhaveri, of Davis Friedman, LLP, of Chicago, for appellant. |
| **Attorneys for Appellee:** | No brief filed for appellee. |