Harriet A. Rife, Appellee, v. William H. Rife, Appellant.

Gen. No. 36,687.

Opinion filed November 21, 1933.

GLENN P. SAYERS, for appellant.

FRANK H. GRAHAM and INA M. R. CAMPBELL, for appellee.

Mr. Presiding Justice Sullivan delivered the opinion of the court.

Defendant, William H. Rife, brings this appeal to reverse an order of the circuit court requiring him to pay complainant, Harriet A. Rife, or her solicitors, $752 for the support of his daughter, and $200 solicitors' fees. This order was entered following a hearing on defendant's petition and complainant's answer thereto. The petition prayed that certain writs of attachment directed against defendant be quashed and that an order be entered satisfying a divorce decree entered July 8, 1927.

The material allegations of defendant's petition were that a decree of divorce was entered July 8, 1927, in the circuit court in favor of complainant and against defendant; that during the months of April and May, 1932, at least two orders for attachment were entered against him for alleged arrearages in the payment of money for the support and education of his daughter, Ina Eunice Rife, claimed to be due under the terms of the decree; that by the terms of the decree property rights were settled between complainant and defendant by his conveyance to her of certain property and payment of $3,500 in her behalf in lieu of alimony; that the decree contained a finding "that the defendant has agreed to pay to the said complainant the sum of $16 per week in advance for the support and education of his child, Ina Eunice Rife, until the further order of this court"; that since the entry of the decree he paid $16 a week for his daughter's support, up to and including the month of August, 1931, which payments extended eight months beyond the attainment by his daughter of her majority; that his daughter graduated from a business college as well as from the Lakeview High school, and that she would be 20 years of age February 5, 1933; that he was 65 years

of age, in ill health and had no income except such as he received from his own labor and effort; and that he had fully complied with the terms of the divorce decree. The petition concluded with the prayer that the writs of attachment be quashed and that an order be entered satisfying the decree of July 8, 1927.

Complainant's answer, which purported to be a counter petition as well as an answer, admitted that defendant had complied with all the terms of the decree affecting her individual rights and that he had faithfully and regularly made his payments for the support of the child, not only until she reached her majority but for eight months thereafter, but denied that defendant was in ill health. It averred that the child was frail, and that although she was a stenographer she was unable to secure employment because of the depression. The answer was replete with immaterial allegations and in large part was a discourse on the alleged villainy of this particular father and the natural duty of all fathers to support their children, both before and after they had reached their majority. It concluded with the prayer that an order entered August 4, 1932, be expunged from the record and for general equitable relief.

The order of August 4, 1932, was entered on the same petition of defendant heretofore referred to and stayed the writs of attachment theretofore issued for defendant until the further order of the court, continued the hearing on the petition until September 19, 1932, and directed, without prejudice to the parties as to complainant's claim against defendant for alleged delinquency in payments for the support of the daughter, that no further payments be required from and after that date.

After several continuances the chancellor, January 8, 1933, entered the order appealed from, which set out the terms of the original decree and found, among other things, that defendant failed to fully

comply with the terms of the decree, in that he was in default in payments for the support of his daughter from September 12, 1931, until August 4, 1932, and that prior to August 4, 1932, he had made no motion to modify the decree with reference to payment of money for the support of his child, and after quashing the writs of attachment and confirming the order of August 4, 1932, providing that payments for the support of the daughter cease on that day, directed defendant to pay to complainant, or her solicitors, $752 as and for support money for his daughter from September 12, 1931, the date defendant discontinued his payments, to August 4, 1932, the date that the court had theretofore ordered payments for the daughter to cease accruing and to pay $200 solicitors' fees to complainant or her solicitors.

Defendant contends that the jurisdiction of the court to order support for a child under a decree of divorce exists only during the minority of the child; that the words "until the further order of the court," in the divorce decree, are ineffective to extend jurisdiction beyond the majority of the child; and that after a decree has been fully complied with and the child has reached its majority the county court is the proper forum in which to compel a father to support his child in a proper case.

Complainant's theory, although not definitely stated, appears to be that the words in the original decree "until the further order of the court," constitute such a reservation of authority as conferred jurisdiction on the court, more than six years after the entry of the decree, to compel payment by defendant for the support of his daughter. regardless of the fact that she had reached her majority.

Sec. 18, chap. 40, of Cahill's Revised Statutes, 1931, ¶ 19, entitled "Divorce," in force when this matter was heard, provides as follows:

"When a divorce shall be decreed the court may make such order touching the alimony and maintenance of the wife, *the care, custody and support of the children, or any of them, as, from the circumstances of the parties and the nature of the case, shall be fit, reasonable and just;* and in case the wife be complainant, to order the defendant to give reasonable security for such alimony and maintenance, or may enforce the payment of such alimony and maintenance in any other manner consistent with the rules and practice of the court. *And the court may, on application, from time to time, make such alterations in the allowance of alimony and maintenance, and the care, custody and support of the children, as shall appear reasonable and proper."*

The rule is well established and generally recognized that the only authority a court of chancery has to provide for the care and support of children is the power granted under the terms of this statute, and that its power is limited by implication to the custody, support and care of minor children. Undoubtedly, by reason of the fact that this doctrine has been so generally accepted and applied, our Supreme Court, so far as we have been advised, has never been called upon to decide whether a father can be compelled by a court of equity, either while a divorce proceeding is pending or subsequent to the entry of a divorce decree, to provide support or education for an adult child under any circumstances. The rule is also well recognized that in the absence of a proceeding for divorce, a court of equity has no jurisdiction either as to the custody or support of children.

The Supreme Court in *Kelley v. Kelley,* 317 Ill. 104, 110, 111, apparently recognizing the first rule above stated, used the following language:

"The nurture and proper training of the children of divorced parents being matters of vital interest to

the State as well as to the children themselves, the legislature has provided that the court granting a divorce shall have full and continuing jurisdiction, during the minority of such children, to make from time to time such orders with respect to their care, custody and support as reason and justice shall require. While the marriage relation may be dissolved and the marital rights and duties thereby brought to an end, the relation of parent and child cannot be destroyed. *The obligation of the father to support his children begins when the child is born and continues during the minority of the child.* This obligation of the father to support his minor child is not affected by the decree granting a divorce, nor by a decree granting the care and custody of his child to his wife or some other suitable person. His children are of his blood. It is not their fault that their parents have been divorced. It is their right to be given care by those who brought them into the world until they are old enough to take care of themselves. We entertain no doubt that the court that granted a decree in this case awarding the custody of the child to the mother had authority, upon the presentation of a petition for the purpose, to issue a citation requiring the father to appear and show cause, if any he had, why he should not be required to assist in supporting his minor child.'' (Italics ours.)

This doctrine was applied in *Boehler v. Boehler,* 125 Wis. 627, 629–630, where proceedings were had to compel a divorced husband to provide support for a 25-year-old daughter, alleged to be unable to support herself, and the court in construing the divorce statute of that State (Wisconsin statute specified minor children) held:

"An action for divorce is a statutory proceeding. The limit of judicial authority therein does not extend beyond that specified in the written law (7 Ency. Pl.

& Pr. 52), which provides that the court may, upon entering a decree of divorce, in case of there being minor children, provide for their care, custody, maintenance, and education, and in its discretion award such custody to either of the parties. Sec. 2362, Stats. 1898. No authority is conferred by statute to provide in a divorce judgment or any proceedings in a divorce action for the support of adult children of the parties. The plain meaning of the statute as to children is that provision for their maintenance shall be limited to the period of minority. Words to that effect are a part of the statute by necessary implication. The custody spoken of is that control of children, belonging as a matter of right to parents, which, of course, does not extend beyond minority. It follows that the modification of the divorce judgment complained of was worse than mere error. It was extrajudicial. It was and is a nullity.

"The proceeding on the part of appellant to obtain a modification of the divorce judgment by inserting therein a clause limiting his obligation for the maintenance of his children to their minority, was wholly useless. The judgment needed no such modification. It only provided for such support during the time the mother was given the care and custody of them, which, as before stated, necessarily ended with their minority. It could not be extended beyond that time by the court and there is no room in the language of the judgment to suppose that there was any purpose thereby to extend it.

"If, for any reason, appellant be legally bound to contribute for the support of his adult child, *Adelia*, the obligation rests upon conditions satisfying the statute as to the support of the poor, and the remedy to enforce it is the one specially prescribed by the statute for such cases, not by a proceeding in the divorce action."

In passing on the provision of the California Civil Code on Divorce, almost identical with our statute, in *Tremper v. Tremper,* 39 Cal. App. 62, 177 Pac. 868, 869, we find this language:

"The plaintiff's duty toward his children is to maintain them 'during their minority.' As each child attains his majority, that duty will terminate."

Complainant's contention that the incorporation in the decree of the words "until the further order of the court" vested the court with authority to enter the order for support of the adult daughter is absolutely without merit. The inclusion of these words contained no grant of authority the court did not have without them. If they had been omitted the court could have exercised its authority just as fully and completely for the care and support of minor children, and no language used in the decree could possibly confer jurisdiction on the court to order support, in a divorce proceeding, for an adult daughter. In the language of the court in the *Boehler* case, *supra,* the attempt of the chancellor to order such support "was worse than mere error. It was extrajudicial. It was and is a nullity." Complainant is not without a remedy if the facts as to her daughter's physical condition or inability to care for herself justify such action. She may proceed against the child's father in the county court under the "Pauper" statute. The *Boehler* case, *supra,* passed squarely on this proposition.

The chancellor apparently was of the opinion that the court had neither authority nor jurisdiction to order support for the adult daughter inasmuch as he confirmed the order entered August 4, 1932, discontinuing payments by the father for the daughter, and directed in the order appealed from that the father should make no payments for the daughter's support from and after August 4, 1932. The order against the father for the payment of $752 for the period from

September 1, 1931, until August 4, 1932, was apparently predicated on the fact that the father had made no motion for the discontinuance of the payments for the support of the daughter, after she had reached her majority, and prior to August 4, 1932. It is true that the father, voluntarily and gratuitously, made payments for his daughter's support for several months after she attained her majority, but this in no way bound him to continue such payments. The chancellor was clearly in error in finding the father liable for $752 for the above mentioned period because of his failure to file such motion. Such motion was entirely unnecessary.

Our attention has been called to the case of *Freestate v. Freestate,* 244 Ill. App. 166, which was decided on other grounds but in which the court, after reciting that the child who was 23 years of age had been an invalid since she was two years old, expressed the opinion that in that case, in the event a proper showing was made, it had authority to require the father to contribute to the support of his invalid child although she was 23 years of age. In that case the court's conclusion was presumably based on the theory that once a court of equity obtained jurisdiction of the cause on any equitable ground it retained jurisdiction for the purpose of avoiding a multiplicity of actions and doing full and complete justice between the parties. This conclusion would be justified if the jurisdiction of the court in a divorce proceeding came under its general equity powers, but it does not. The jurisdiction of courts of equity to hear and determine divorce cases is conferred only by statute, and while a court of equity may exercise its powers as such within the limits of the jurisdiction conferred, such jurisdiction depends entirely upon the grant of the statute. (*Smith v. Johnson,* 321 Ill. 134.) Inasmuch as it is our opinion that the divorce statute did not contemplate the support of any but minor children,

we are unable to agree with the conclusion reached by the court in the *Freestate* case, *supra.*

Part of the relief prayed for in defendant's petition was that an order be entered satisfying the decree of divorce because its terms had been fully complied with. Such an order is useless and unnecessary. Payments for the support of the child ceased by operation of law when the child reached her majority.

Allowance for solicitors' fees in this cause must fall with the disallowance of complainant's claim for the support of her adult child.

The motion of complainant heretofore made to dismiss the appeal of defendant, which was reserved, is denied.

For the reasons indicated herein the order of the circuit court is affirmed as to that part of the order quashing the writs of attachment, and reversed and remanded with directions to vacate that part of the order providing for the payment of $752 for support of the adult daughter and $200 for solicitors' fees.

*Affirmed in part, reversed in part, and remanded with directions.*

GRIDLEY and SCANLAN, JJ., concur.