DEPARTMENT OF MENTAL HYGIENE, STATE OF CALIFORNIA, PLAINTIFF-RESPONDENT AND CROSS-APPELLANT, v. JOSEPH L. JUDD, AN INCOMPETENT PERSON, AND ORIEN L. LINKEY, AS GUARDIAN OF THE ESTATE OF JOSEPH L. JUDD, AN INCOMPETENT PERSON, DEFENDANTS-APPELLANTS AND CROSS-RESPONDENTS.

Argued May 18, 1965—Decided June 14, 1965.

*Mr. Carl V. Greenburg* argued the cause for the plaintiff-respondent and cross-appellant (*Messrs. Greenburg, Wilensky & Feinberg,* attorneys).

*Mr. Leslie B. Magee* argued the cause for the defendants-appellants and cross-respondents (*Messrs. Applegate, Quinn & Magee,* attorneys; *Mr. John B. Applegate,* of counsel).

PER CURIAM. The plaintiff, Department of Mental Hygiene, State of California, instituted an action under the Uniform Reciprocal Enforcement of Support Act (see *N. J. S.* 2A:4–30.1 *et seq.; Cal. Civ. Proc.* § 1650 *et seq.*) seeking to hold the defendant Joseph L. Judd, a resident of New Jersey, and the guardian of his estate, Orien L. Linkey, liable for the

cost of maintenance of Joseph L. Judd's mentally ill son (Arthur L. Judd) in California state hospitals for the mentally ill. The Juvenile and Domestic Relations Court of Sussex County entered a judgment holding the defendants liable from August 1, 1960, the date on which the defendant Orien L. Linkey assumed his duties as guardian of the estate of Joseph L. Judd. The defendants appealed to the Appellate Division, contending that they were under no liability whatever, and the plaintiff cross appealed, contending that an earlier date should have been fixed for the commencement of liability. We certified before argument in the Appellate Division.

The record before us indicates that Arthur L. Judd, the son of the defendant Joseph L. Judd and Carrie Fleur Judd, was born in Pennsylvania in 1914; his parents were divorced in Pennsylvania in 1921 and he and his mother migrated to California in 1930; thereafter Arthur married and his son Richard was born; in 1937 Arthur began showing mental symptoms, his condition became pronounced in 1938 and in 1939 he was committed to a California state institution as insane; since then he has remained in California state institutions where he has been maintained as an indigent patient. From time to time the State of California, through its agencies, addressed communications to the defendants, claiming that they were liable for Arthur's maintenance under the terms of section 6650 of California's Welfare and Institutions Code, and demanding payment; in response the defendants, through their attorney, denied all liability and asserted that Arthur had originally been taken to California against his father's wishes, that his father had never been a resident of California, that Arthur had been fully emancipated before he became mentally ill, and that he has a son who should now take care of him.

After the parties had argued their cross appeals but before any decision had been rendered by this Court, the California Supreme Court handed down its opinion in *Department of Mental Hygiene v. Kirchner,* 60 *Cal. 2d* 716, 36 *Cal. Rptr.*

488, 388 *P. 2d* 720 (1964), remanded in 379 *U. S.* 953, 85 *S. Ct.* 871, 13 *L. Ed. 2d* 753 (1965), and reaffirmed in *Cal.*, 43 *Cal Rptr.* 329, 400 *P. 2d* 321 (1965). There the plaintiff brought an action against the estate of Ellinor Vance to recover the cost of maintaining Mrs. Vance's mother in a California state institution for the mentally ill. The California Supreme Court directed the entry of judgment for the defendant. In the course of its opinion it first pointed out that the common law did not recognize any liability "on a child to support parents, or on parents to support an adult child," and that the California cases have stated that "the right to maintain any action against the father for the support of an adult child, if any such right exists, is purely a creation of the statute." 388 *P. 2d,* at *p.* 721 *n*4. It then proceeded to declare unconstitutional the California statute (section 6650 of the Welfare and Institutions Code) which provides that the "husband, wife, father, mother, or children of a mentally ill person" shall be liable for "his care, support, and maintenance in a state institution." The court's holding was grounded on the provisions of the California Constitution which have been generally thought in California to be substantially the equivalent of the equal protection clause of the Fourteenth Amendment to the United States Constitution. See 400 *P. 2d,* at *p.* 322.

Whether we agree or disagree with the *Kirchner* opinion (see 49 *Cornell L. Q.* 516 (1964)) is beyond the point, for it is entirely clear that in California no action could be maintained either under statutory or common law principles against any relative of Arthur L. Judd for the cost of maintaining him. That being so, the Uniform Act upon which the plaintiff's action in New Jersey was originally grounded would, in the light of its acknowledged reciprocal purposes, be inapplicable here. The plaintiff now urges that its pleadings be molded to the end that a cause of action on its behalf be sustained under any available New Jersey law. New Jersey's statutes such as *N. J. S. A.* 30 :4–66 and *N. J. S. A.* 30 :4–60 deal with the liability of parents for the maintenance

of their incompetent children in New Jersey institutions and have no relation to a case, as the one at hand, where the maintenance is in a state institution of California. And New Jersey's common law decisions recognized the general absence of liability on the part of parents for the maintenance of their adult children. See *Brown v. Ramsay*, 29 *N. J. L.* 117, 120 (*Sup. Ct.* 1860); Annotation, 1 *A. L. R.* 2d 910, 914 (1948).

However, we need not pursue the issue for, assuming that New Jersey would, independently of its statutes and under appropriate circumstances, recognize a common law responsibility on the part of a parent to maintain an adult child, it ought nonetheless not recognize it under the circumstances presented here. The California authorities acknowledge that California residents, no matter how closely they may be related to Arthur L. Judd, may not be held liable for his maintenance in California, yet they seek to establish here that nonresident relatives may be held liable. We consider this discriminatory approach to be unacceptable to our policy and inconsistent with the very thesis advanced in *Kirchner*, namely, that the purpose of the confinement encompasses the protection of society as well as the confined and that the cost of maintenance must be borne by the state and cannot be charged "to one class in the society" (such as parents or children) without violating the state's equal protection clause. 388 *P. 2d*, at *p.* 722. Although we remain free to differ if and when called upon in an action by the New Jersey authorities to determine the validity of our own statutes (*N. J. S. A.* 30:4–66; *N. J. S. A.* 30:4–60), the principles expressed by the California Supreme Court are clearly binding on all of the California authorities including the plaintiff here. The judgment entered in the lower court is:

Reversed with direction that the plaintiff's action be dismissed.

*For reversal* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, HALL, SCHETTINO and HANEMAN—6.

*For affirmance*—None.