**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0249-15T1

KENNETH SCARPA,

    Plaintiff-Respondent,

v.

LINDA SCARPA,

    Defendant-Appellant.

_____

Submitted February 28, 2017 — Decided March 30, 2017

Before Judges Reisner and Rothstadt.

On appeal from Superior Court of New Jersey,
Chancery Division, Family Part, Bergen County,
Docket No. FM-02-10489-94.

Ferro & Ferro Law Offices, attorneys for
appellant (Nancy C. Ferro, on the briefs).

Callagy Law, PC, attorneys for respondent
(Brian P. McCann, on the brief).

PER CURIAM

    In this post-judgment dissolution action, defendant, Linda
Scarpa, appeals from the Family Part's August 7, 2015 order
granting plaintiff, Kenneth Scarpa's, motion seeking to terminate
his child support obligation based upon the emancipation of the

parties' now twenty-three-year-old youngest son. The court entered its order after determining defendant failed to rebut the presumption that the adult son was emancipated. Defendant contends that emancipation was improper because her son has a physical disability and has been classified as a special needs learner since preschool. We affirm.

The parties were married in 1982 and divorced on August 7, 1995, pursuant to a final judgment of divorce (FJOD) that incorporated the parties' property settlement agreement. Three sons were born during the marriage, the youngest in 1993. The FJOD awarded the parties joint legal custody of their three children, designated defendant as the parent of primary residence and obligated plaintiff to pay child support. It required support to be paid until the children were emancipated, which it defined "pursuant to the current case law which includes a period during which a child is attending college or other post-graduate education."

On July 24, 2015, plaintiff filed his motion to terminate child support. In support of his motion, plaintiff filed a certification stating that his son graduated high school in 2012 and, after attending a community college for three years accumulated only thirty-four credits, approximately six credits per semester. Plaintiff also stated that his son actually spent

almost all of his time living with plaintiff and, in addition to paying the court ordered support, plaintiff paid other expenses for his son, including his college tuition.

Defendant filed a cross-motion and certification in opposition to plaintiff's motion. Defendant explained in her certification that her son is blind in his left eye since birth, and had been classified as Specific Learning Disabled by his public school district, which provided him with services in accordance with an individualized education program (IEP)[1] since kindergarten. Some of the services included occupational therapy, physical therapy, and participation in a resource program to help develop his fine motor skills. The school district provided the services from kindergarten through high school, enabling the son to graduate on time.

In preparation for the son's transition to college, the school district prepared a psychological and educational evaluation of the parties' son. The psychological evaluation concluded that he would require some accommodations to be successful in college. The accommodations included being provided with "writing coaches and tutors and meet[ing] with the professors on a regular basis."

---

[1] An IEP "is a written statement outlining the education placement and goals for [a] child." Lascari v. Bd. of Educ., 116 N.J. 30, 34 (1989).

The report indicated the son would "need a great deal of academic support when he has a course which requires [nonverbal] skills." It also found his "processing speed is in the low average range[, which] indicates the need for extended time for tests and examinations . . . if he is to accurately demonstrate his mastery of the material."

The educational evaluation also provided examples of academic accommodations that were necessary for his success. They included "modified reading and writing assignments, word banks, visual models, and examples of work that has been completed."

The parties' son started college full-time in 2012. Neither he nor his parents applied for any academic accommodations through the 2014-15 school year. A May 2015 unofficial school transcript indicated that although he registered as a full time student, he failed or withdrew from various college courses. In 2015, defendant provided her son's college with his high school special education records, and the college deemed him eligible to receive special accommodations and support. Specifically, the school determined that he was eligible to receive 100% extra test taking time, assistive technology, permanent tutoring and peer note-taking, among other accommodations.

In a reply certification, plaintiff responded to defendant's contentions. In his certification, defendant stated despite his

4

son's physical issue and academic needs, he is strong and healthy, maintains an unrestricted driver's license, drives his own vehicle, is an athletic hockey player, and socializes with his siblings and friends. According to documents supplied by plaintiff, the community college placed his son on academic probation and, as a result, he could only attend part-time, being limited to taking no more than nine credits per semester.

The court considered the parties' oral arguments on August 7, 2015. During that hearing, the court repeatedly expressed concern over defendant's failure to come forward with any competent evidence to support her contention that her son's physical or cognitive limitations prevented him from becoming emancipated. The court stated:

> Maybe I am medically unaware of the specifics, the degree of diminishment of this -- this 22 year old's abilities one way or the other. I really don't know by way of a complete thorough medical report how his current condition, if it is -- if he is labeled in some way disabled, affects his ability to be a current success carrying more than six or nine -- completing more than six or nine credits for any particular semester.
>
> . . . .
>
> [I]t's understandable that [he] has some type of disability, the specifics . . . of the disability are as you guys have told me what they are. I have no medical personnel in terms of a physician or anyone else, a psychiatrist, a psychologist, a therapist . . . I don't have

anything specifically identifying it, the issues that he has intellectually or in a capacity viewpoint, how it affects his schooling going forward.

[1T42.]

The court concluded that defendant failed to sufficiently establish that her son was unemancipated despite his less than full-time school status. The court's order granting plaintiff's motion noted that the court found that the parties' son "failed to maintain full-time status as a college student over the course of his three years in college." This appeal followed.

Our review of the trial judge's fact-finding is limited. "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998). Moreover, "[b]ecause of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court factfinding." Cesare, supra, 154 N.J. at 413. "Accordingly, when a reviewing court concludes there is satisfactory evidentiary support for the trial court's findings, 'its task is complete and it should not disturb the result, even though it has the feeling it might have reached a different conclusion were it the trial tribunal.'" Llewelyn v. Shewchuk,

440 <u>N.J. Super.</u> 207, 213-14 (App. Div. 2015) (quoting <u>Beck v. Beck</u>, 86 <u>N.J.</u> 480, 496 (1981).

"A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." <u>Manalapan Realty, L.P. v. Twp. Comm. of Manalapan</u>, 140 <u>N.J.</u> 366, 378 (1995). "[A] trial judge's legal conclusions, and the application of those conclusions to the facts, are subject to our plenary review." <u>Spangenberg v. Kolakowski</u>, 442 <u>N.J. Super.</u> 529, 535 (App. Div. 2015) (quoting <u>Reese v. Weis</u>, 430 <u>N.J. Super.</u> 552, 568 (App. Div. 2013)). "To the extent that the trial court's decision constitutes a legal determination, we review it de novo." <u>D'Agostino v. Maldonado</u>, 216 <u>N.J.</u> 168, 182 (2013).

Applying those guiding principles, we conclude that the Family Part correctly determined that defendant failed to establish a prima facie claim that the parties' son was not emancipated. We substantially agree with the reasoning stated in the court's oral decision. We add only the following brief comments.

Contrary to defendant's position, the burden of proving that her son was not emancipated shifted to her based on her adult child's age. Absent an agreement to the contrary, when a child reaches the age of majority it is "prima facie, but not conclusive,

A-0249-15T1

proof of emancipation." Llewelyn, supra, 440 N.J. Super. at 216 (citation omitted). "Once the presumption is established, the burden of proof to rebut the statutory presumption of emancipation shifts to the party or child seeking to continue the support obligation." Ibid.

"Prior to addressing whether parental support is required for a child who reaches majority, the pivotal question is whether the child remains unemancipated." Ricci v. Ricci, __ N.J. Super. __, __ (App. Div. Feb. 9, 2017) (slip op. at 28). A child with disabilities will be considered unemancipated "if the child suffers from a severe mental or physical incapacity that causes the child to be financially dependent on a parent." N.J.S.A. 2A:34-23.[2] Also, a child who is enrolled full time in secondary education will ordinarily remain unemancipated. See Patetta v. Patetta, 358 N.J. Super. 90, 94 (App. Div. 2003) ("while parents

---

[2] The law was significantly changed in 2016 when N.J.S.A. 2A:17-56.67 was enacted to create an automatic termination of support when a child reaches the age of nineteen, subject to continuation upon application by the residential parent or the child leading to a court order. It became effective on February 1, 2017. Pursuant to the statute, all child support terminates once a child turns twenty-three. The statute is applicable even when the child has a mental or physical disability. N.J.S.A. 2A:17-56.67(e)(2). However, if a parent needs to obtain financial assistance for a disabled adult child, the new statute allows the court to order "another form of financial maintenance for a child who has reached the age of 23." Ibid.

are not generally required to support a child over eighteen, his or her enrollment in a full-time educational program has been held to require continued support."); Cf. Keegan v. Keegan, 326 N.J. Super. 289, 295 (App. Div. 1999) (holding that a hiatus from college during which the child worked full-time did not result in emancipation). When a child has special needs, however, those needs may interfere with the ability to attend college full-time and special accommodations may be required.

An adult child who suffers from a disability but is self-sufficient will ordinarily be considered to be emancipated. See Kruvant v. Kruvant, 100 N.J. Super. 107, 119 (App. Div. 1968). Where the claim is that an adult child suffers from a physical or mental health condition, even one for which the child is under treatment, "there [must be] evidence [that the child's] issues interfered with [his or] her ability to be independent" in order to rebut the presumption. Llewelyn, supra, 440 N.J. Super. at 218. For example, where an adult child had been institutionalized prior to emancipation and "becomes so disabled as to be incapable of maintaining himself because of a mental illness or emotional disorder which pre-existed his attaining his majority, the husband may be required at the suit of the wife to contribute to the cost of his necessary care and maintenance." Kruvant, supra, 100 N.J. Super. at 118. However, there must be medical or psychiatric

evidence presented about an adult child's health issue from which he allegedly suffered. See Ribner v. Ribner, 290 N.J. Super. 66, 72 (App. Div. 1996).

Defendant, as the party obligated to rebut the presumption of emancipation, failed to meet her burden of proof. She was given an opportunity to present competent evidence from experts, see id. at 72, but only presented her own opinion, which was based, in part, upon three-year-old school records that did not support the contention that the parties' son suffered from any disability that prevented him from moving beyond his parents' sphere of influence. The school records were not a competent substitute for expert evidence and, in any event, they only related to the son's problems in school and established that there was help available for him to pursue a full-time education. There simply was no evidence that the son suffered from any problem that prevented him from pursuing a full time education or supporting himself. See Kruvant, supra, 100 N.J. Super. at 118. Without any competent proof of a disability's impact on his ability to support himself, his "decision to seriously pursue a college education alone does not create the required dependency allowing him . . . to be unemancipated." Ricci, supra, __ N.J. Super. at __ (slip op at 35-36).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0249-15T1